### KAUFFMAN MILLING CO. v. STUCKEY.

1. CASE CRITICISED—SALES—RESCISSION.—The ruling in *Kauffman* Milling *Co. v.* Stuckey, 37 S. C., 7, approved, and the doctrine reaffirmed, that where personal property has been purchased by sample at a sound price, the purchaser has no right to rescind unless (1) there was an agreement at the time of purchase, that if the article did not come up to the sample or implied warranty, the purchaser might return it, or (2) there has been fraud, or (3) an entire failure of consideration.[1]

---

[1] The waiver of the right to rescind a contract by the use of property to test it is the question annotated in a note to the case of Cream City Glass Co. *v.* Friedlander (Wisc.), 21 L. R. A., 135.

2. SALES—RESCISSION—LIABILITY.—Where a merchant purchases by sample fifty barrels of flour at a sound price, and sells fourteen of these barrels, and from knowledge thus acquired then claims that the whole lot is worthless, and offers to return the unsold barrels, which offer is refused, the merchant would be liable for the barrels sold, even if the jury should believe that the whole lot was worthless.

Before NORTON, J., Spartanburg, January, 1893.

This is an action by Kauffman Milling Company against J. K. Stuckey.

*Messrs. Duncan & Sanders*, for appellant.

*Messrs. Bomar & Simpson*, contra.

November 20, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This case has been in this court before (see 37 S. C., 8), where all the facts will be found stated. The complaint alleged that it was a corporation doing business in the city of St. Louis, Missouri, and that on or about October 24, 1888, the plaintiff sold and delivered to the defendant on account twenty-five barrels of flour, of the brand "Victoria," at $5.05 per barrel, and twenty-five barrels of flour, of the brand "Gem," at $4.75 per barrel, which the defendant agreed to pay therefor ; that the defendant has paid the freight on said flour, viz., $40.50, and that there is due and owing from the defendant to the plaintiff on said account the sum of $204.50, &c. The defendant admitted the principal allegations, but made defence that the flour was purchased by "sample," and did not come up to the "sample," and after he had sold a number of the barrels (14), he offered to return it, or keep it at a reduced price, which offers were duly refused by the plaintiff. The plaintiff had a verdict for $195.50, but upon appeal this court granted a new trial, for error in regard to the admission of certain testimony, &c.

After the case went back, the defendant, by permission of the court, amended his answer, setting up the following defences, to wit: "(1) That the flour was sold to him by sample. (2) That it was sold to him as good sound merchantable flour,

for the purpose of being sold to his customers for bread stuff for family use, and under the special agreement that it would give satisfaction to his customers.   (3) That relying upon this guaranty, and believing it to be sound and good flour, he hauled it to his store and offered it for sale.   (4) That the flour did not come up to the sample, was unfit for the purposes for which it was bought, was not a sound merchantable flour, was unfit for family use, and failed to come up to the guaranty given by plaintiff.   (5) That as soon as he ascertained that it was not giving satisfaction, was unfit for family use, and not a sound merchantable flour, he tendered it back to plaintiff."

Under the pleadings as amended, the case was tried before Judge Norton and a jury.  Several counter-claims were pleaded, as in the first trial, but from the view taken, it will not be necessary to consider them here.   There was much testimony upon all the issues.   There were also requests to charge on both sides.   The judge, among other things, charged as follows : "So, gentlemen, the sum and substance of the charge I have given you is this : If you think there was no defect in the flour, then you ought to find for the plaintiff the full amount of their bill under the contract, which is admitted, the price is admitted, less the amount paid for freight that is set out in the complaint ; that is the plaintiff's case as he made it.   You ought to find the plaintiff's case as he states it in his complaint, if there was no defect in the flour, and if it did not fail to come up to the implied warranty, or the special warranty made on its sale. If you do think that it did not come up to either one of these warranties, or failed to come up to both of them, then you will make your calculation as to what you think the value of the flour was, taking into consideration what the contract price was, and give, after deducting the amount that was paid for freight, a verdict for the plaintiff for the value, taking the contract price as the basis of value, to see what proportion you ought to deduct from the contract price.   If you think, however, from the evidence that the flour was of no value at all, then you could only give the plaintiff judgment for so much of the flour as was actually sold by Mr. Stuckey, as he would have no right to take even a worthless article of the plaintiff,

and sell it, and then defend himself by saying that it was worthless, but he must account for the proceeds of the sale. You would still have to deduct from that the amount of the freight, and find for the plaintiff or the defendant, whichever had the balance in his favor, after making that calculation," &c.

Under this charge, the jury again found for the plaintiff $106. From this judgment the defendant again appeals to this court upon numerous exceptions (fourteen in number), which are all printed in the record, and need not be set out here. As far as we are able to see, there is really but one new point made, all the others having been decided in the first trial of the case; and, as we understand it, the point claimed to be still open may be expressed in the following proposition: That the additional allegation in the amended answer of the defendant, claiming that, at the time of the sale, a special guaranty was verbally made to the following effect: "That the flour sold would give satisfaction to the customers of the purchaser;" and that guaranty having been broken, the rights of the defendant are now greater than they were at the first trial, under a simple breach of a warranty implied by law, which alone was considered at that time, &c.

Passing by the vagueness of the alleged special guaranty, "satisfactory to the customers," and assuming that it was made and breached, as claimed, we do not see how that could alter the character of the contract, so as to make it a conditional sale. On the contrary, it still remained a warranty; possibly a little different from the ordinary warranty of soundness implied by law, but still a warranty, as to which the remedy was damages for its breach, unless the facts authorized the party to rescind, and as a consequence to return the property. This is the right which the defendant so strenuously claims, and which was denied him at the first trial. It was then and there held, both upon reason and authority, "that the defendant had no right to rescind, unless (1) there was an agreement at the time he purchased, that if the flour did not come up to sample [or, as we suppose, warranty], he could return it; or (2) where there has been fraud; or (3) where there has been an entire failure of consideration," &c. It is

8—40

not now claimed, under the amended answer and the allegation of the special guaranty, that there was any such agreement as to returning the property. Upon this subject there is a total absence of proof as at the first trial. Nor was there any proof of fraud at either trial. It may have been incidentally argued, that there was entire failure of consideration, by regarding the sale of the fourteen barrels as necessary, merely to test the quality of the flour in the other barrels, which were in the store "unopened and unsampled." We can not accept this view, and concur with the judge when he charged: "If you think, however, from the evidence, that the flour was of no value at all, then you could only give the plaintiff judgment for so much of the flour as was actually sold by Mr. Stuckey, as he would have no right to take even a worthless article of the plaintiff and sell it, and then defend himself by saying it was worthless, but he must account for the proceeds of sale," &c. In the language of Judge Evans, speaking for the court in the case of *Carter & Harden* v. *Walker*, 2 Rich., 48: "As the jury have found that the property was of value, and there was no allegation of fraud in the sale, the defendant was not entitled to rescind the contract. He was entitled to an abatement in the price, and that the jury have allowed, and, therefore, the motion for a new trial must be dismissed."

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and the appeal dismissed.